UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWIN R. JONAS, III and | : | Hon. Joseph H. Rodriguez |
| BLACKTAIL MOUNTAIN RANCH CO., L.L.C., | | |
| Plaintiffs, | : | Civil Action No. 13-2949 |
| v. | : | |
| NANCY D. GOLD, ESQ., LINDA B. JONAS, | : | OPINION |
| CHARNEY, CHARNEY & KARAPOUSIS, P.A., | | |
| ADLER, SACHAROW, GOLD, TAYLOR, | | |
| KEYSER AND HANGER, | : | |
| Defendants. | : | |

In 1990, Plaintiff Edwin R. Jonas, III ("Jonas") and pro se Defendant Linda B.
Jonas ("Linda") divorced.  Since that time, there has been a significant amount of
litigation in multiple state and federal courts all over the United States.  Here, Plaintiffs,
Jonas and Blacktail Mountain Ranch, of which Jonas is a managing member, allege that
Defendants Linda Jonas, Linda's New Jersey counsel Nancy D. Gold, Esquire, ("Gold"),
and the law firms of Charny, Charny, & Karapousis, P.A. ("Charny") and Adler,
Sacharow, Gold, Taylor, Keyser and Hanger, a Professional Corporation ("Adler")[1]
violated New Jersey Common Law and Plaintiffs' civil rights under 42 U.S.C. § 1983
when Defendants fraudulently obtained a judgment in the Jonases' divorce proceedings.

Presently before the Court are several dispositive motions filed separately by the
parties in this action seeking summary judgment and dismissal of the Amended

---

[1] There is no proof that service was made as to Defendant Adler.  In Defendant Gold's Answer, she denies
that the Adler firm continues to exist. See, Answer, [Dkt. No. 20], ¶5. Given that service was not made in the
requisite time, Defendant Adler is dismissed from the action, without prejudice.  Fed. R. Civ. P. 4(j).

1

Complaint.  Defendant Linda Jonas moves for dismissal[2] of the Amended Complaint, although she does not identify the Rule under which she moves, and for Edwin Jonas and Blacktail Mountain Ranch to be declared vexatious litigants.[3] See Dkt. No. 10. Defendant Nancy Gold moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) & (6). See Dkt. No. 33. Defendant Charny moves for summary judgment pursuant to Fed. R. Civ. P. 56.  See Dkt. No. 34.  Plaintiffs move to Strike Declarations of John Slimm, Esq. and Frank Orbach, Esq. and demand a hearing under Fed. R. Evid. 201(e).  See Dkt. No. 38. Plaintiffs also move for summary judgment and filed a Cross Motion for Summary Judgment against Defendants on Liability. See Dkt. No.  42.

The Court has considered the extensive briefing, a multitude of supplemental letters, and the arguments advanced at the hearing in this matter on July 29, 2014.  For the reasons that follow, Defendants Gold's, Linda's, and Charny's motions are granted and Plaintiffs' motions are denied.

## I.    Background

The history of this case spans over twenty five years and includes litigation in the Superior Court of New Jersey Chancery Division and Appellate Division, the Supreme Court of New Jersey, the Florida trial and appellate courts, the Montana trial and

---

[2] Because Linda is a pro se party, the Court must construe her submissions broadly. See Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Given that she did not identify the standard under which she moves for dismissal, the Court will construe her motion under Federal Rules of Civil Procedure 12 (b)(1) and (6).

[3] Reference to Blacktail Mountain Ranch is implicit in the Court's references and rulings as to Jonas, as the Plaintiffs are in privity. The Amended Complaint identifies Jonas as the managing member of Blacktail Mountain Ranch.  As a result, the Court finds that Jonas and Blacktail Mountain Ranch are in privity for purposes of collateral estoppel and res judicata. Specifically, Plaintiffs satisfy the second, third, and fifth categories for privity identified by the Supreme Court in Taylor v. Sturgell, 553 U.S. 880, 895-96, 128 S.Ct. 299, 2173-74 (2009).

appellate courts, the Supreme Court of Montana, the United States District Court for the District of Montana, the United States Court of Appeals for the Ninth Circuit, the United States Bankruptcy Court for the District of Montana, the United States Supreme Court and the United States Tax Court.

At the heart of these matters is Edwin Jonas' continuous challenges to and collateral attacks of several post-judgment orders issued by the Family Part of Superior Court of New Jersey regarding his divorce from Linda. The exhausting history of the dissolution of the Jonases' marriage is littered with a series of child custody and alimony battles.  At the end of the day, Linda Jonas was awarded custody and Edwin Jonas was ordered to pay alimony and child support.[4] Because Jonas repeatedly failed to comply with court-ordered obligations, several measures were imposed by Superior Court Judge Robert Page, including the establishment of a constructive trust. Linda Jonas was a trustee of the trust and the trust account was held by the Adler firm and Nancy Gold. Gold represented Linda during the divorce proceedings in the Superior Court of New Jersey, Chancery Division, Family Part, Camden County Vicinage, Cause No. FM-04-

---

[4] In 2006, Judge Page addressed a motion filed by Linda to enforce Jonas' obligations to pay alimony and medical expenses for their children. Specifically, Linda Jonas moved for payment of alimony, entry of judgment against Jonas for alimony arrears, entry of judgment against defendant for unpaid medical insurance costs and his share of unreimbursed medical and dental care for the children, and for counsel fees. Jonas filed opposition and cross motions to terminate his alimony obligation, compel an accounting of all monies paid to plaintiff from a constructive trust imposed by the court on January 12, 1996, and to appoint a receiver.  Jonas asked that Linda's motions also be denied based on unclean hands. Judge Page granted relief in favor of Linda and dismissed Jonas' cross motion pursuant to the fugitive disentitlement doctrine.  Jonas had failed to appear or otherwise comply with Judge Page's previous orders.  As a result, the court dismissed Jonas' motions until he posted a "sufficient security bond to cover outstanding judgments and his commitment to personally appear in New Jersey before this court at the court's earliest convenience." Jonas v. Jonas, FM-04-259-89, May 4, 2006.  In addition, the court ordered the issuance of a warrant for Jonas' arrest for his non-appearance in court. Id.  The Appellate Division affirmed, noting that Jonas' "defiance is especially egregious in light of the fact that he was an attorney-at-law of this State and was suspended in this State and others for his willful evasion of court orders." Jonas v. Jonas, 2008 WL 239069, *2 (N.J. Sup. Ct. App. Div. Dec. 29, 2008) ("We affirm Judge Page's reasoned and tempered application of the doctrine, and we also apply it to defendant's appeal.").

259-89. In May 2006, the New Jersey Superior Court entered a judgment against Jonas for unpaid child support, alimony, attorney's fees and other obligations. Since that time, Linda has moved to domesticate the New Jersey Order in Florida and Montana.

At every step of the way, Linda's attempts to enforce the New Jersey order have been met with virulent resistance from Jonas, who not only continues to sue Linda, but also sued the attorneys who have represented her in the various litigations, his own counsel, and the Montana state court judge who presided over the civil domestication action brought by Linda in that state.[5] See Jonas v. Waterman, 13-CV-16, 2013 WL 2962766 (D. Mont. June 12, 2013).  And Jonas has earned a reputation for filing frivolous complaints.  Recently, the District of Montana imposed sanctions upon and admonished Jonas for his repeated abuse of the court.  See, Jonas v. Jonas, 13-CV-90, 2014 WL 389138, *3 (D. Mont. Aug. 7, 2014) (Ordering the clerk to distribute the court's order to the disciplinary boards of the bar examiners of the states of Maine, New Jersey, and Pennsylvania.)  Several courts have refused to give Jonas' claims any consideration, having addressed Jonas' claims in summary fashion. See, id., citing (Jonas v. Gold, 58 So.3d 396 (Fla. 4th Dist. App. 2011); Jonas v. Fid. Nat. Title Ins. Co. of Pennsylvania, 44 So.3d 596 (Fla. 4th Dist. App. 2010); Jonas v. Jonas, 773 So.2d 1163 (Fla. 4th Dist. App. 2000); Jonas v. Jonas, 40 A.3d 733 (N.J. 2012); Jonas v. Jonas, 950 A.2d 905 (N.J. 2008); Jonas v. Jonas, 758 A.2d 649 (N.J. 2000); see also Jonas v. Jonas, 2011 WL 6820244 at *2 (N.J. Super. App. Div. 2011) ("Given the posture of the case, defendant's

---

[5] In February, 2010, the Montana Supreme Court affirmed a judgment that issued a writ of execution against Jonas in the amount of $1,091,391.21.  The Court also affirmed the issuance of a charging order and an order for the appointment of a receiver, foreclosure of the lien, and for the dissolution of the Blacktail Mountain Ranch.  The proceeds generated by dissolving the Ranch were ordered to be applied as satisfaction against the New Jersey judgment. See, Jonas v. Jonas, 359 Mont. 443, 249 P.3d 80 (Mont. 2010).

claims of error lack sufficient merit to warrant discussion in a written opinion."); Jonas v. Jonas, 2008 WL 239069, *2 (N.J. Sup. Ct. App. Div. Dec. 29, 2008) ("This is the fifth time this case has come before us since the parties' 1998 divorce.")).

For these reasons, the Court will not recount the protracted history of this case in great detail. Plaintiff's arguments here are frivolous and warrant little, if any, discussion in light of the arguments that support dismissal of the Amended Complaint.  In short, Plaintiffs continue to claim that several New Jersey judgments culminating in the May 4, 2006 judgment were fraudulently obtained and that "the validity of the Montana judgment [ordering dissolution of Blacktail Mountain Ranch] is based on the assumption that certain judgments used in reaching that judgment were final judgments when in fact they were not final judgment[s] under New Jersey law." See Plaintiff's Brief in Support, 4.  Plaintiffs allege that the finality of the New Jersey Judgment is an issue in the present case. Id.  The Court disagrees.[6]

There are seven counts in the Amended Complaint.  Count I is entitled "Legal Malpractice v. Nancy D. Gold" and alleges claims of legal malpractice, fraud and negligence.  Counts II and III separately allege a breach of fiduciary duty against Linda

---

[6] The issue of the finality of the 2006 New Jersey order has been decided by the Montana District Court in its opinion adopting the Findings and Recommendations of the Magistrate Judge Jeremiah C. Lynch. Jonas v. Jonas, 13-CV-90, 2014 WL 978099 (D. Mont. March 12, 2014).  It is arguable that this Court is collaterally estopped from revisiting that ruling. Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995). Collateral estoppel applies where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action." Id. (citing United Indus. Workers v. Gov't of the Virgin Islands, 987 F.2d 162, 169 (3d Cir. 1993)).

In addition, the New Jersey Appellate Court affirmed Judge Page's Order and the decision is final.  Jonas v. Jonas, 2008 WL 239069, *2 (N.J. Sup. Ct. App. Div. Dec. 29, 2008).  This Court has no reason to revisit this issue. The Doctrine of collateral estoppel precludes this court from considering this issue de novo.  Even if this Court were to consider the merits of Jonas' argument, this Court agrees with the well-reasoned opinion of the District Court of Montana regarding the finality of the order. See Jonas v. Jonas, 13-CV-90, 2014 WL 978099 (D. Mont. March 12, 2014).

and Gold, respectively.  Count IV alleges fraud and conspiracy to commit fraud against both Linda and Gold.  Count V alleges conversion, misappropriation, and embezzlement against all Defendants.  Count VI is a claim of Legal Malpractice against Charny and Adler.  Finally, Count VII, alleges a violation of 42 U.S.C. §1983 against Linda and Gold.

## II.    <u>Applicable Standards</u>

There are three standards of review at play in the present matter. Federal Rule of Civil Procedure 12 governs a court's decision to dismiss a claim based on the pleadings. <u>See</u> Fed. R. Civ. P. 12.  More specifically, Federal Rule of Civil Procedure 12(b)(1) governs a court's decision to dismiss a claim for "lack of subject matter jurisdiction" and Federal Rule of Civil Procedure 12(b)(6) governs a court's decision to dismiss a claim for failure to state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).   Federal Rule of Civil Procedure 56 governs the court's consideration of whether summary judgment is warranted. <u>See</u> Fed. R. Civ. P. 56.

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a court to dismiss a case for lack of subject matter jurisdiction.  A defendant may contest subject matter jurisdiction by attacking the face of the complaint (i.e., a facial attack) or by attacking "the existence of subject matter jurisdiction in fact, quite apart from any pleadings" (i.e., a factual attack). <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977); <u>Schwartz v. Medicare</u>, 832 F. Supp. 782, 787 (D.N.J. 1993); <u>Donio v. United States</u>, 746 F. Supp. 500, 504 (D.N.J. 1990).  A facial attack "contest[s] the sufficiency of the pleadings." <u>Common Cause of Pa. v. Pennsylvania</u>, 558 F.3d 249, 257 (3d Cir. 2009) (citation omitted).  On a facial attack, the court must read the complaint in the light most

favorable to the plaintiff and consider the allegations of the complaint as true.
Mortensen, 549 F.2d at 891.

Under a factual attack, a court is not confined to the pleadings but may weigh and consider evidence outside the pleadings, including affidavits, depositions, and exhibits to satisfy itself that it has jurisdiction. Id.; Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000); Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997) (stating that court can consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction). This is because on a factual motion to dismiss for lack of subject matter jurisdiction, the court's very power to hear the case is at issue. Mortensen, 549 F.2d at 891; Gotha, 115 F.3d at 179. Moreover, on a factual attack, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claim. Mortensen, 549 F.2d at 891.

Regardless of which approach is used, a plaintiff has the burden of proving that jurisdiction exists. Lightfoot v. United States, 564 F.3d 625, 627 (3d Cir. 2009) (citing Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000)); Mortensen, 549 F.2d at 891. "The court may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 438 (D.N.J. 1999) (citations omitted).

If the court finds that it lacks subject matter jurisdiction, it must dismiss the action under Rule 12(h)(3). See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a complaint based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[7]  See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  Watson v. Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[8] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)

---

[7] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

[8] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred.  "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" Id.

8

(citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 129 S. Ct. at 1950 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### C. Summary Judgment Pursuant to Federal Rule of Civil Procedure 56.

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### D. Judicial Notice

Under any of these standards of review, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).  Rules 12(b)(1) and 56 permit evidence outside of the Complaint.  Even under a Rule 12(b)(6) posture, where the Court is limited to the allegations plead on the face of

the complaint, a court may consider judicially noticeable facts without converting a motion to dismiss into a motion for summary judgment. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (noting courts "ordinarily examine ... matters of which [they] may take judicial notice" when ruling on Rule 12(b)(6) motions to dismiss); Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 n. 3 (3d Cir. 1999) (holding that a court may consider "matters of public record" on a motion to dismiss without converting the motion to one for summary judgment).

It follows that a court may take judicial notice of the existence of another court's opinion. See Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (A court may take judicial notice of another court's opinions "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.") (citations omitted). Likewise, a court may take judicial notice of the record from a previous court proceeding between the parties. See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n. 3 (3d Cir. 1988).

Consideration of "matters of public record" and "documents incorporated into the complaint by reference" are matters of which a court may take judicial notice. Tellabs, Inc., 551 U.S. at 322, 127 S.Ct. 2499. Here, Jonas specifically mentions the orders of the New Jersey Superior Court related to his divorce from Linda and the related domestication litigation before the courts in Florida, Montana, and New Jersey. See, Am. Compl. ¶¶36-39, 42. He also specifically mentions the United States Bankruptcy Court and the United States Tax Court proceedings. See id. at ¶¶ 22, 32, 36,

48.  As a result, the Court takes judicial notice of Jonas' pleadings in those actions, as well as the opinions and orders of the courts. Tellabs, Inc., 551 U.S. at 322, 127 S.Ct. 2499.  Moreover, given that the complaints filed by Jonas in the various state court actions are averments that he himself prepared and submits to a court, these pleadings "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).[9]

## III.    Discussion

For the reasons that follow, Defendants' motions are granted.  The Court does not have jurisdiction over Plaintiffs' claims pursuant to the Rooker-Feldman doctrine.  In addition, the state law claims and constitutional claims are time-barred.  Even if the claims were subject to review by this Court, they fail to state a claim upon which relief can be granted.  As a result, summary judgment is granted as to Defendant Charny and the Amended Complaint is dismissed as to Defendants Linda and Gold.[10]  Plaintiffs' motion for summary judgment is dismissed as moot.

---

[9] The Court rejects Jonas' claim that a hearing under Federal Rule of Evidence 201(e) requires a formal hearing before a court can take judicial notice in all circumstances. As the District of Montana held, "[t]he Sixth and the Tenth Circuit, however, have held the opposite: "Federal Rule of Evidence 201(e) does not require 'under all circumstances, a formal hearing.'" Amadasu v. The Christ Hosp., 514 F.3d 504, 507–08 (6th Cir. 2008) (quoting Am. Stores Co. v. Commr. of Internal Revenue, 170 F.3d 1267, 1271 (10th Cir. 1999))." Additionally, Jonas had the opportunity to be heard at the hearing before this Court on July 29, 2014. Plaintiffs' First Motion to Strike Declarations of John Slimm, Esq. and Frank Orbach, Esq. Demand for Hearing under Fed. R. Evid. 201(e) and Memo of Law in Support Thereof [38] is denied.

[10] The Court also finds that the Amended Complaint is barred by the Domestic Relations Exception to Federal Jurisdiction. See Ankenbrandt v. Richards, 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (holding domestic relations exception precludes subject matter jurisdiction over diversity cases involving the issuance of divorce, alimony, or child custody decrees); Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (Holding that jurisdictional bar does not extend to tort matters that arise out of and are outside the divorce proceeding.). Here, Plaintiffs argue that the claims in the Amended Complaint are not a challenge to the divorce decree; they are separate tort claims.  The Court disagrees.  While Plaintiffs plead claims that sound in tort, at the heart of Plaintiffs' Amended Complaint is Jonas' attempt to be relieved from the New Jersey Superior Court's order compelling him to pay child support and alimony, which are barred from review by this Court. See,

The Court will address the various motions of the Defendants as to each count in the Amended Complaint.

## A. <u>Counts I and VI</u>

Defendant Gold's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and(6) is granted as to Count I of the Amended Complaint.  For the same reasons, Charny's motion for summary judgment as to Count VI is granted.

Count I, entitled "Legal Malpractice v. Nancy D. Gold," alleges claims of legal malpractice, fraud, and negligence and is dismissed.  For the same reasons, summary judgment is granted in favor of Charny as to Count VI, entitled "Legal Malpractice v. Charny."

First, the claim is barred by the Rooker-Feldman doctrine because it is essentially an appeal from New Jersey Superior Court Judge Page's 2006 Order.  Jonas' claims here are on their face an appeal from the Superior Court of New Jersey's decision.  "Under the Rooker–Feldman doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." <u>Taliaferro v. Darby Twp. Zoning Bd.</u>, 458 F.3d 181, 192 (3d Cir. 2006) (citations omitted).  There are four requirements that must be met for the Rooker–Feldman doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit

---

e.g., <u>Zirkind v. State of New York</u>, 07-CV-5602, 2007 WL 4300258, *2 n.3 (D.N.J. Dec. 5, 2007) (citing <u>Galtieri v. Kane</u>, No. 03-2994, slip op. at 3 (3d Cir. March 4, 2004) (stating that a federal court has no jurisdiction over a domestic relations matter even when the complaint is drafted to "sound in tort ... or contract ... or even under the federal constitution.") (citations omitted)).

was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." B.S. v. Somerset Cnty., 704 F.3d 250, 259–60 (3d Cir. 2013) (quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010)). As such, application of the Rooker–Feldman doctrine is necessarily limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

The Third Circuit explains the Rooker–Feldman doctrine as barring federal district courts from hearing cases under two circumstances: " 'first, if the federal claim was actually litigated in state-court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state-court was wrong.' " In re Knapper, 407 F.3d at 580 (emphasis added) (quoting Walker v. Horn, 385 F.3d 321, 329 (3d Cir.2004); Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000).

"[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, '[w]here federal relief can only be predicated upon a conviction that the state court was wrong.' " Id. (quoting Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989) (quoting Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)). See also Exxon Mobil, 544 U.S. at 293, 125 S.Ct. 1517 ("In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment," but the

federal court is divested of jurisdiction under Rooker–Feldman only where it is asked to redress injuries caused by an unfavorable state-court judgment.). Importantly, if a plaintiff's claim in federal court is inextricably intertwined with a previous state court adjudication, the district court lacks jurisdiction over the claim even if it was not raised in the state court. Id. at 327, 125 S.Ct. 1517.

Here, the district court is invited to review and reject Judge Page's dismissal of Jonas' claims of misappropriation of the constructive trust under the fugitive disentitlement doctrine.

Regardless of whether Plaintiff's allegations were "actually litigated"— and in this case the claims were not litigated because of Jonas' failure to appear before the court and failure to comply with Judge Page's previous orders. Jonas v. Jonas, 2008 WL 239069, *2 (N.J. Sup. Ct. App. Div. Dec. 29, 2008). The Court finds that Jonas is a state-court loser, complaining of an injury caused by Judge Page's dismissal of his claims under the fugitive disentitlement act.  The claims dismissed by the Superior Court include his allegation that the constructive trust was mishandled and seek an accounting of the activity of the trust.  All of Plaintiffs' claims in the Amended Complaint center on the constructive trust account handled by Gold and Linda. Plaintiffs, therefore, ask this Court to review and reject the state court judgments. In particular, the Court finds that the ultimate relief sought by Plaintiff in this matter is the same relief he sought and lost in the Superior Court of New Jersey.  At a minimum, it is inextricably intertwined.

In this regard, the Court rejects Plaintiffs' attempt to characterize his claims as sounding in tort.  Jonas invites this Court to take an action that would negate the New

Jersey Superior Court's admonition of his conduct and permit Jonas proceed with his attack against the management of the constructive trust without subjecting himself to the jurisdiction of the New Jersey Superior Court.  Such a review is proscribed by Rooker-Feldman. [11]  <u>Walker</u>, 385 F.3d at 330.

The Court finds that the present Amended Complaint is "inextricably intertwined" with issues resolved by the New Jersey Superior Court and this Court is without jurisdiction to resolve Jonas' claims under the Rooker–Feldman doctrine. As a result, pursuant to the Rooker–Feldman abstention doctrine, this Court lacks subject matter jurisdiction over the Plaintiff's claims and dismisses them as to Defendant Gold pursuant to Fed. R. Civ. P. 12(b)(1) and grants summary judgment pursuant to Fed. R. Civ. P. 56 in favor of Defendant Charny.

In addition, Counts I and VI of the Amended Complaint also fail to state a claim upon which relief can be granted because Gold and Charny did not represent Edwin Jonas and because Jonas fails to allege facts that would trigger the extraordinary circumstance of permitting a non-client to sue an adversary's attorney. The necessary elements of a claim for legal malpractice are: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of such duty; and

---

[11] Jonas absconded and failed to appear before Judge Page or otherwise demonstrate any intent to comply with the Orders of that court.  As a result, Judge Page applied the fugitive disentitlement doctrine, pursuant to <u>Matsumoto v. Matsumoto</u>, 171 N.J. 110 (2002), which bars a fugitive, such as Jonas, from seeking relief in the very court whose jurisdiction he evades.  The upshot was that Jonas' cross motion to terminate his alimony obligation, to compel an accounting of all monies paid to Linda from the constructive trust, and to appoint a receiver was dismissed without prejudice.  Judge Page's Order was affirmed by the New Jersey Appellate Division on January 30, 2008. <u>Jonas v. Jonas</u>, 2008 WL 239069 (N.J. Super. App. Div. Jan. 30, 2008). Jonas remains free to revisit the Superior Court's order and have his motions heard upon satisfaction of the conditions precedent in Judge Page's order.

(3) proximate causation. Albright v. Burns, 206 N.J. Super. 625, 632, 503 A.2d 386

(N.J. Super. App. Div. 1986).

Here, Plaintiffs attempt to sue Linda's attorneys.  The determination of whether

Gold and her firms owed Jonas a duty is a question of law. Petrillo v. Bachenberg, 139

N.J. 472, 479, 655 A.2d 1354 (1995); Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d

527 (1991) ("The question of whether a duty exists is a matter of law properly decided by

the court, not the jury, and is largely a matter of fairness or policy."). See also Taylor v.

Cutler, 157 N.J. 525, 724 A.2d 793 (1999).  Only in limited circumstances will a lawyer

owe a non-client a duty of care; none of those circumstances are present here. See

Barsotti v. Merced, 346 N.J. Super. 504 (N.J. App. Div. 2002).  Moreover, New Jersey

courts are reluctant to permit a non-client to sue his adversary's attorney.  LoBiondo v.

Schwartz, 199 N.J. 62, 100 (2009) ("Our reluctance to permit nonclients to institute

litigation against attorneys who are performing their duties is grounded on our concern

that such a cause of action will not serve its legitimate purpose of creating a remedy for a

nonclient who has been wrongfully pursued, but instead will become a weapon used to

chill the entirely appropriate zealous advocacy on which our system of justice

depends.").

In addition, Plaintiffs fail to supply the Court with the requisite affidavit of merit

in support of their claims for legal malpractice, negligence, and fraud against attorney

Gold or Charny.  In Nuveen Municipal Trust v. Withumsmith Brown P.C., the Third

Circuit held that claims against a professional asserting fraud and aiding and abetting

fraud required proof of a deviation from the professional standards of care under New

Jersey law.  Nuveen Municipal Trust v. Withumsmith Brown P.C., 752 F.3d 600 (3d Cir.

2014).  Specifically, the Court found that New Jersey's Affidavit of Merit Statute, N.J. Stat. Ann. § 2A:53A-26-29, required an affidavit of merit from "an independent professional attesting" to claims "seeking money damages for fraud, negligent misrepresentation, and malpractice, allegedly committed by two professional [law] firms." Id. at 601.  Here, Jonas alleges claims similar to those considered in Nuveen. Under New Jersey law, the lack of an affidavit of merit is fatal to these claims.  Id. Summary judgment is granted in favor of Defendant Charny and the claim is dismissed as to Defendant Gold pursuant to Fed. R. 12(b)(6).

Plaintiffs' claims of fraud and conspiracy to commit fraud against Gold and Charny are also dismissed as time-barred. The New Jersey judgments were entered against Jonas in May 2006.  The statute of limitations has passed for Plaintiffs' state law claims and 42 U.S.C. § 1983 claim.  See City v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) (in New Jersey statute of limitations is two years for tort); N.J.S.A. 2A: 14-2 (two years for tort); see also  N.J.S.A. 2A: 14–1 ("[e]very action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued."). Jonas filed the instant Complaint on May 10, 2013.

Plaintiffs argue that the Doctrine of Fraudulent Concealment tolls the limitations period in this case because the fraud was concealed until April 23, 2008, when Plaintiffs claim Gold divulged the fraud during a proceeding on the record before the United States Tax Court. See, Plaintiffs' Letter brief, August 14, 2014 [Dkt. 89]. The Court rejects this argument. As noted by Defendant Charney in their supplemental submission of August 19, 2014, Edwin filed an action in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida under Case No. CA020057808AH in the matter of Edwin R. Jonas, III v. Linda B. Jonas, individually and as trustee of constructive trust; Nancy D. Gold, individually; and Adler, Sacharow, Gold, Taylor, Keyser & Hagner, P.C.. See, Def. Charny Letter Brief, August 19, 2014, Ex. A [Dkt. No. 91]. The Palm Beach County action was served on December 8, 2004. Id. The Second Amended Complaint (Revised) of Edwin Jonas in Palm Beach County, Florida alleges that Jonas learned of the "extrinsic fraud" of Gold in connection with the trust assets "recently and after the judgments were domesticated" in Florida. See id., Ex. A., Palm Beach County Second Amended Complaint, ¶7. The allegations made in the Florida action demonstrate knowledge by Plaintiffs as early as December 8, 2004.[12]

As here, the Palm Beach County Complaint alleges breach of fiduciary duty and negligence related to the constructive trust, and the administration of the constructive trust against Gold and Linda. The Court finds that Jonas had, at the very least, the requisite awareness of the alleged fraud by Defendants Gold and Charny well before

---

[12] The Court takes judicial notice of the Palm Beach County complaint. Jonas specifically mentions, in Paragraphs 36-39 of the Amended Complaint, Linda's attempts at domestication of the New Jersey Order in Florida. Thus, Jonas' litigation in Florida is relied upon on the face of the Amended Complaint. In addition, Jonas' Palm Beach County complaint is attached as an exhibit in support of summary judgment on the August 19, 2014 letter brief of Defendant Charny. See, Ex. A, [Dkt. No. 91].

2008. See, Lapka v. Porter Hayden Co., 162 N.J. 545 (2000).  Jonas alleged similar claims in his cross motion before the New Jersey Superior Court and the Palm Beach County Court.  As a result, Plaintiffs' arguments that they were precluded from filing sooner because the fraud was concealed are unavailing; Jonas' New Jersey cross motion and the Palm Beach County Complaint both demonstrate sufficient awareness of the alleged mishandling of the constructive trust.[13]  Plaintiffs' claims in this regard are time barred.

### B. Counts II and III

Plaintiffs' claims of breach of fiduciary duty against Linda (Count II) and Gold (Count III) are dismissed as time-barred and for the same reasons set forth as to Counts I and II under Rooker-Feldman.

"A claim for breach of fiduciary duty, which has a six year statute of limitations, commences to run at the point the plaintiff has actual or constructive knowledge of the

---

[13] The Court rejects Plaintiffs' argument that the statute of limitations should be equitably tolled under the doctrine of fraudulent concealment. Equitable tolling is an extraordinary remedy that is applied "when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.' " Santos v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)). The remedy applies: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Id. (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)).

Plaintiffs are not entitled to application of the doctrine under the circumstances of this case because they cannot show "that the defendants' conduct prevented him 'from recognizing the validity of [her] claim within the limitations period.' " Kliesh v. Select Portfolio Servicing, Inc., 419 Fed. App'x 268, 271 (3d Cir. 2011) (quoting Mathews v. Kidder, Peabody & Co., 260 F.3d 239, 256 (3d Cir. 2001)) (alteration in original). To the contrary, Plaintiffs' vast litigation history in courts of multiple states and various jurisdictions demonstrates that they have taken every opportunity to seek relief from the New Jersey Superior Court orders under every possible theory. Plaintiffs' averments in the New Jersey Superior Court and in the Florida and Montana courts, and in the United States Tax Court and Bankruptcy courts leaves little doubt that Plaintiffs' chief complaint from the time that the New Jersey Superior Court ordered that Jonas place security into a constructive trust has been fraud, misappropriation, and negligence on behalf of Linda and her attorneys.  Such notice does not warrant the limited application of equitable tolling.

breach." <u>Fleming Cos. v. Thriftway Medford Lakes</u>, 913 F.Supp. 837 (D.N.J. 1995) (citing <u>Zola v. Gordon</u>, 685 F.Supp. 354, 374 (S.D.N.Y. 1988)). "A plaintiff has actual or constructive knowledge of a cause of action for breach of fiduciary duty when the plaintiff learns, or reasonably should learn, of the existence of the state of facts which may equate in law with the cause of action." <u>Id.</u> (citing <u>Burd v. New Jersey Tel. Co.</u>, 76 N.J. 284, 386 A.2d 1310, 1314 (1978)).  Plaintiffs' claim of fiduciary duty is time-barred for the same reasons set forth <u>infra.</u> with respect to Counts I and II.

Plaintiffs' claim is barred under Rooker-Feldman because it is inextricably intertwined with the divorce proceeding.  Attorney Gold's actions in the divorce proceedings, with respect to the constructive trust created by the New Jersey Superior Court, are related to the state action.  Likewise, Linda's usage of the funds from the constructive trust are inextricably intertwined with the Superior Court action.  In addition, for the reasons expressed herein, Plaintiffs claims are barred by the Domestic Relations Exception to federal subject matter jurisdiction. <u>See</u>, <u>infra.</u>, p.13, n.10. Plaintiffs also fail to state a claim upon which relief can be granted.  As a result, Gold's and Linda's motions to dismiss are granted.

**C.  Counts IV & V**

Plaintiffs' claims in Count IV alleges fraud and conspiracy to commit fraud against Linda and Gold.  Count V alleges conversion, misappropriation, and embezzlement against all Defendants.  These claims are dismissed as time-barred and pursuant to the Rooker-Feldman doctrine for the same reasons set forth herein as to Counts I and II.  In addition, Plaintiffs claims are barred by the Domestic Relations Exception to federal subject matter jurisdiction.

**D. Count VII**

Plaintiffs' claims in Count VII allege a violation of 42 U.S.C. §1983 by Defendants Gold, Adler, and Charny. Plaintiffs' claims against Gold and Chary under 42 U.S.C. §1983 are dismissed because neither Gold nor Chasrny are state actors under §1983 and because, as previously discussed infra., the claims are time barred.

To state a cognizable claim under Section 1983, Plaintiffs must allege a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law. Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Here, Plaintiffs must demonstrate two essential elements under Section 1983: (1) that the Plaintiffs were deprived of a right or privilege secured by the Constitution or laws of the United States and (2) that Plaintiffs were deprived of their rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa, 891 F.2d 458, 464 (3d Cir. 1989). Even if Plaintiffs could satisfy the first element, Plaintiffs' cannot demonstrate that they were deprived of their rights by a person acting under the color of state law.

The management of a trust account does not necessarily turn a private attorney into a State actor. See Greening v. Moran, 739 F. Supp. 1244 (D. Ariz. 1990) (citing National Collegiate Athletic Association v. Tarkanian, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). Although some courts have found that public defender attorneys are state actors when handling administrative functions such as hiring and firing, the reach of §1983 does not extend to acts made as attorneys on behalf of a defendant. Polk County

v. Dodson, 454 U.S. 312, 325 (1981). As a result, Gold and Charny are not a state actors under 42 U.S.C. §1983.  See Tarkanian, 488 U.S. 179, 109 S.Ct. 454.

In addition, the statute of limitations has passed for Jonas' constitutional claims against Gold and Charny pursuant to 42 U.S.C. §1983. See Wallace v. Kato, 549 U.S. 384, 387 (2007) (explaining that in a §1983 claim, the Statute of Limitations is that for personal-injury torts); Cito v. Bridgewater Twp. Police Dept., 892 F. 2d 23, 25 (3d Cir. 1989) (in New Jersey, the Statute of Limitations is two years for a tort); N.J.S.A. 2A:14-2 (two years for tort). The Superior Court Orders of which Plaintiffs complain were entered, according to Plaintiffs' Amended Complaint, on January 12, 1996. See Am. Compl., Count III.  Similar claims were made by Jonas in connection with the divorce on August 29, 1996, March 19, 1999, and May, 2006; namely, that Ms. Gold acted in conspiracy with Linda, and made false representations to Judge Page. See id., at Count IV.  Under any of these time-lines, Jonas' claims under 42 U.S.C. §1983 are time-barred and this claim is dismissed pursuant to Fed. R. Civ. 12(b)(1) and (6) and summary judgment is granted in favor of Charny.

### E. Linda's Cross Motion for Plaintiffs Edwin R. Jonas and Blacktail Mountain Ranch to be declared vexatious litigants.

Linda seeks to have Jonas declared a "vexatious litigant" and asks that Jonas be enjoined from filing future litigation in this Court.  The Third Circuit cautions that an injunction against a vexatious litigant "should not be imposed by a court without prior notice and some occasion to respond." Gagliardi v. McWilliams, 834 F.2d 81, 83 (3d Cir. 1987).  Generally, courts are reluctant to curtail a litigant's right to pursue future litigation.  However, when a litigant abuses the courts, especially for the purpose of

24

harassing a party, the Court may impose an injunction.  Such an injunction may be imposed pursuant to the All Writs Act, 28 U.S.C. § 1651 (1982), or pursuant to Federal Rule 11 under the clause for sanctions permitting "other appropriate relief which the court deems just and proper." Gagliardi, 834 F.2d at 83.

Jonas has already been declared vexatious in other jurisdictions and ordered to pay Linda's costs and attorneys' fees. See Jonas v. Jonas, 13-CV-90, 2014 WL 3891328 (D. Mont. Aug. 7, 2014); Jonas v. Jonas, 371 Mont. 113, 120, 308 P.3d 33 (Mont. 2013) ("We accordingly conclude that Edwin's appeal is vexatious and was filed for the purposes of delay [...] we conclude that the costs and fees assessed should be solely levied against Edwin [and] remand for a determination and assessment of costs and attorney fees reasonably incurred on appeal.")

Jonas' history of abusive litigation is not only well documented, but also troubling. "[A] continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court." In Re Oliver, 682 F.2d 443, 446 (3d Cir. 1982). However, "such an [injunctive] order is an extreme remedy and should be used only in exigent circumstances[.]" Id. at 445.  Given that Jonas was not permitted an opportunity to fully oppose the motion at the hearing, at this time, the motion is denied without prejudice.

## IV.   Conclusion

For the reasons stated herein, and those set forth on the record during the hearing in this matter on July 29, 2014, Defendant Linda Jonas' motion to dismiss is granted, Defendant Gold's motion to dismiss is granted, and Defendant Charny's motion

for summary judgment is granted.  Plaintiffs' motions to strike and for summary judgment are denied.

An appropriate Order shall issue.


Dated: September 30, 2014


s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE